# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

GERALD NELSON, JOAN BZDAWKA,
SANDRA EHRLICHMAN, MARILYN BERDIKOFF,
LENORE CZARNECKI, and JOHN GORTON,
      **Plaintiffs,**

      **v.**                         **Case No. 04C0193**

**MILWAUKEE COUNTY, WISCONSIN
DEPARTMENT OF HEALTH AND FAMILY
SERVICES, and HELENE NELSON, in her
official capacity as Secretary of DHFS**
             **Defendants.**

---

## <u>DECISION AND ORDER</u>

Plaintiffs, who are elderly and afflicted with disabilities, bring this putative class action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act ("RA"), 29 U.S.C. § 701 et seq., alleging that defendants Wisconsin Department of Health and Family Services ("DHFS") and its Secretary, Helene Nelson, (collectively "state defendants") and Milwaukee County are discriminating against them by inadequately compensating service providers participating in the Family Care program. Plaintiffs also allege that defendants are violating 42 U.S.C. § 1396a(a)(30)(A) relating to payments to Medicaid service providers. Plaintiffs seek damages for defendants' past conduct as well as declaratory and injunctive relief. Defendants answered plaintiffs fourth amended complaint, and now move to dismiss challenging plaintiffs' standing and the sufficiency of their complaint.

## I. BACKGROUND

The Medicaid program provides health care services to low income individuals. The federal government provides most of the funding for the program, and the states administer it. The federal government imposes requirements on participating states, but the states may seek waivers of certain of them. See 42 C.F.R. § 430.25(b) (stating that "[w]aivers are intended to provide the flexibility needed to try new or different approaches to the efficient and cost-effective delivery of health care services, or to adapt their programs to the special needs of particular areas or groups of recipients").

Family Care is a Medicaid waiver program[1] that provides comprehensive community-based services, including adult day care, home delivered meals, supportive home care, health care and daily-living skills training to elderly and disabled persons with long-term care needs. In most counties in which it operates, Family Care is available to any low income adult with a disability, but in Milwaukee County it is available only to low income adults with disabilities over the age of sixty. Family Care offers a resource center, which provides information about services available to participants, and a CMO, which assesses enrollees' needs for services and contracts with providers to deliver such services.

The Milwaukee County Department of Aging ("MCDA") is the CMO in Milwaukee County, and pursuant to a contract with defendant DHFS, it arranges for the provision of

---

[1]Family Care involves two waivers. First, a community based services waiver permits Wisconsin to use Medicaid funds to pay for services to persons with disabilities in community, rather than institutional, settings. See § 1396n(c). Second, a managed care waiver permits Wisconsin to limit the services provided by the Family Care program to persons who enroll in a care management organization ("CMO") and to limit enrollees' choice of providers. § 1396n(b).

2

Family Care services to enrollees in exchange for capitated payments.[2]  Plaintiffs Nelson, Bzdawka, Ehrlichman and Berdikoff reside in adult family homes[3] or community-based residential facilities [4] operated by Homes for Independent Living ("HIL") and also attend day programs operated by HIL.  Plaintiffs Czarnecki and Gorton reside in community based residential facilities operated by Senior Residential Care of America ("SRCA").  Family Care pays for the services provided by HIL and SRCA.

Plaintiffs allege that MCDA pays HIL and SRCA less than other counties pay for comparable services and less than Milwaukee County pays for comparable services for persons not enrolled in Family Care.  HIL and SRCA have unsuccessfully sought increased compensation from MCDA.  In 2004, HIL notified MCDA of its intention to withdraw from Family Care because of its dissatisfaction with the compensation, and as a result, MCDA notified plaintiffs Nelson, Bzdawka, Ehrlichman and Berdoff that they would have to move.  These plaintiffs then commenced the present action and obtained MCDA's agreement not

---

[2]A capitated payment is a payment "of a fixed sum per period for each patient under the care of a selected provider, regardless of the actual costs incurred by the provider in treating the patient."  Andrew Ruskin, Capitation: The Legal Implications of Using Capitation to Affect Physician Decision-Making Processes, 13 J. Contemp. Health L. & Policy 391, 391 (Spring 1997).  Medicaid providers are usually paid on a fee-for-service rather than a capitated basis.

[3]An adult family home is a place where three or four adults who are not related to the operator reside and receive care, treatment or services that are above the level of room and board and that may include up to seven hours per week of nursing care per resident.  See http://dhfs.wisconsin.gov/rl_DSL/AdultFamilyHome/AFHintro.htm (last updated Dec. 12, 2004); see also Wis. Admin. Code § HFS 88.02(5) (defining adult family home).

[4]A community based residential facility is a place where five or more unrelated people live together in a community setting.  Services provided include room and board, supervision, support services and may include up to three hours of nursing care per week.  See http://dhfs.wisconsin.gov/rl_DSL/CBRF/CBRFintro.htm (last updated Dec. 12, 2004); see also Wis. Admin. Code § HFS 83.03 (defining a community based residential facility).

3

to move them pending resolution of the case.  SRCA states that if compensation is not

increased, it too will withdraw from Family Care, in which event plaintiffs Czarnecki and

Gordon would  also have to be moved.

I will state additional facts in the course of the decision.

## II.  DISCUSSION

**A.      Overview of ADA and RA and Plaintiffs' Claims**

The ADA provides that "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such

entity." 42 U.S.C. §12132. The RA contains similar language but applies only to entities

receiving federal funding.  Pursuant to the ADA and RA, the Attorney General has issued

regulations including 28 C.F.R. § 35.130(b)(1), which requires public entities to administer

their programs so as to ensure full access by persons with disabilities,[5] 28 C.F.R. §§

_____

[5]Section 35.130(b)(1) states in relevant part that "[a] public entity . . . may not, . . .
on the basis of disability (i) Deny a qualified individual with a disability the opportunity to
participate in or benefit from the aid, benefit or service; (ii) Afford a qualified individual with
a disability an opportunity to participate in or benefit from the aid, benefit or service that is
not equal to that afforded others; (iii) Provide a qualified individual with a disability with an
aid, benefit or service that is not as effective in affording equal opportunity to obtain the
same result, to gain the same benefit, or to reach the same level of achievement as that
provided to others; (iv) Provide different or separate aids, benefits, or services to
individuals with disabilities or to any class of individuals than is provided to others unless
such action is necessary to provide qualified individuals with disabilities with aids, benefits
or services that are as effective as those provided to others; (v) Aid or perpetuate
discrimination against a qualified individual with a disability by providing significant
assistance to an agency, organization, or person that discriminates on the basis of
disability in providing any aid, benefit, or service to beneficiaries of the public entity's
program; . . . and (vii) Otherwise limit a qualified individual with a disability in the enjoyment
of any right, privilege, advantage or opportunity enjoyed by others receiving the aid, benefit,
or service.

Regulations implementing the RA are substantially equivalent to the above

4

35.130(d) (ADA), 42.503(d) & 41.51(d) (RA), which require public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals," and 28 C.F.R. § 35.130(b)(7), which requires public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of a disability unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service program or activity."

Plaintiffs may prove discrimination by showing (1) intentional discrimination, (2) disparate impact, or (3) failure to make a reasonable accommodation. First Step, Inc. v. City of New London, 247 F. Supp. 2d 135, 150 (D. Conn. 2003). "Disparate treatment . . . is the most easily understood type of discrimination . . . [S]ome people [are treated] less favorably than others because of their race, color, religion, sex, or [other protected characteristic]." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 33 n.15 (1977). A claim for disparate impact arises when a facially neutral rule or practice adversely affects members of a protected group, such as the disabled, more than others regardless of whether such adverse impact was actually intended. Id. A reasonable accommodation claim arises when a public entity fails to "make reasonable modifications" that "are necessary to avoid discrimination on the basis of disability." 28 C.F.R. §35.130(b)(7). A reasonable accommodation claim recognizes that, in some cases, the ADA creates an affirmative duty "to provide special preferred treatment, or reasonable accommodation." Dunlap v. Ass'n of Bay Area Gov'ts, 996 F. Supp. 962, 965 (N.D. Cal. 1998).

---

regulations. See 28 C.F.R. § 41.51, 28 C.F.R. § 42.503, 45 C.F.R. § 84.4(b)(4).

5

Plaintiffs assert nine claims. In counts one and five, they allege that defendants are violating the ADA and RA by paying Family Care providers less than other providers of comparable services. In counts two and six, plaintiffs allege that defendants are violating the ADA and RA requirements that public entities administer programs so as to ensure full access to persons with disabilities. In counts three and seven, plaintiffs allege that defendants are violating the ADA and RA by compensating Family Care providers so inadequately as to force plaintiffs to be placed in non-integrated settings. In counts four and eight, plaintiffs allege the defendants are violating the ADA and RA by failing to reasonably modify the compensation paid to Family Care providers. In count nine, plaintiffs allege that by inadequately compensating Family Care providers, defendants are violating the "equal access" provision of § 1396a(a)(30)(A).

I turn now to defendants' motions.

**B.     Standing**

In order to invoke federal jurisdiction, a plaintiff must have standing to sue.[6] To survive a motion to dismiss based on an asserted absence of standing, a plaintiff must allege: (1) injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the defendant's actions; and (3) that a favorable decision is likely to redress the injury. Tobin for Governor v. Ill. State Bd. of Elections, 268 F.3d 517, 527 (7th Cir. 2001). A court must analyze standing separately with respect to each type of relief sought.

---

[6]The standing requirement has both constitutional and prudential components. In the present case, only the constitutional components are at issue.

6

<u>Discovery House v. Consol. City of Indianapolis</u>, 319 F.3d 277, 280 (7th Cir. 2003). On a motion to dismiss for lack of standing, a court may consider affidavits relating to standing. <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975).

The injury in fact requirement is an "'undemanding'" one. <u>Family & Children's Ctr., Inc. v. Sch. City of Mishawaka</u>, 13 F.3d 1052, 1058 (7th Cir. 1994) (quoting <u>N. Shore Gas Co. v. EPA</u>, 930 F.2d 1239, 1242 (7th Cir. 1991)). Plaintiffs need only allege a stake in the outcome that goes beyond "intellectual or academic curiosity." <u>S.E. Lake View Neighbors v. Dep't of Housing & Urban Dev.</u>, 685 F.2d 1027, 1033 (7th Cir. 1982). Provided that a litigant can establish the existence of a distinct and palpable injury, even a minor injury can satisfy the requirement. <u>See ACLU v. City of St. Charles</u>, 794 F.2d 265, 268 (7th Cir. 1986) (holding that the fact that plaintiffs had to alter their normal route of travel to avoid viewing a cross displayed on public property satisfied the standing requirement).

Defendants first argue that plaintiffs lack standing to obtain damages for past conduct[7] because they fail to allege that they suffered an actual injury. I agree. Plaintiffs allege that defendants' past conduct violated the ADA, the RA and § 1396(a)(30)(A), but they do not allege that such conduct injured them in any concrete way. Plaintiffs do not allege, for example, that defendants' operation of Family Care required them to move or resulted in their receiving deficient care. Plaintiffs appear to concede this, stating only that there is "a substantial likelihood that they <u>will be</u> harmed." (Pls.' Br. at 22 (emphasis

---

[7]Plaintiffs also seek a declaratory judgment that defendants violated the ADA, the RA and § 1396a(a)(3)(A). However, declaratory relief is unavailable as a means of adjudicating past conduct. James Wm. Moore, <u>Moore's Federal Practice</u> § 57.04 (3d ed. 2005).

7

added)).  Thus, I will dismiss plaintiffs' claims insofar as they relate to defendants' past conduct.

Defendants also argue that plaintiffs lack standing to obtain prospective relief because they do not adequately allege injury in fact, causation or redressability.[8]  I address defendants' arguments separately as to each element.

To satisfy the injury in fact requirement based on a threat of future harm, plaintiffs must allege that they face a real and immediate threat of injury.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 190 (2000); see also City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 107 n.8 (1983) (stating that injury must be "certainly impending" and not merely speculative).[9]  Plaintiffs allege that by inadequately compensating Family Care service providers, defendants threaten them with injury because HIL and SRCA will withdraw from Family Care, which will cause plaintiffs to be moved and possibly suffer trauma and deterioration.  Thus, plaintiffs plead a threat of injury that is real and immediate.  HIL has previously indicated that in the absence of increased compensation it will withdraw from Family Care, and executives from HIL and SRCA

_____

[8]Contrary to plaintiffs' assertion, I may determine plaintiffs' individual standing before addressing the issues of class certification and class standing.  See Payton v. County of Kane, 308 F.3d 673, 680 (7th Cir. 2002); see also Linda S. Mullenix, Multi-Jurisdictional and Cross-Border Class Actions: Symposium Issue: Standing and Other Dispositive Motions After Amchem and Ortiz: The Problem of 'Logically Antecedent' Inquiries, 2004 Mich. St. L. Rev. 703, 727 (2004).

[9]Whether plaintiffs allege an injury sufficiently imminent to support standing might also be analyzed as a question of ripeness.  Smith v. Wis. Dep't of Agric., Trade & Consumer Prot., 23 F.3d 1134, 1141 (7th Cir. 1999) (stating that with respect to future injuries, the ripeness and standing doctrines are interchangeable because the court could tell plaintiffs that they have suffered no injury and have no standing, or the court could tell plaintiffs that they have suffered no injury yet and so their claim is not ripe).

8

present affidavits to this effect. Such withdrawal would require that plaintiffs be moved. Moreover, the possibility that plaintiffs would suffer "transfer trauma" – the adverse effect on the physical and mental health of elderly or chronically ill individuals who are forced to move – is real. See, e.g., Jennifer L. Williamson, The Siren Song of the Elderly: Florida's Nursing Homes & the Dark Side of Chapter 400, 25 Am. J. L. & Med. 423, 435 (1999) (citing Kira Anne Larson, Note, Nursing Homes: Standards of Care, Sources of Liability, Defenses to Suit, & Reform, 37 Drake L. Rev. 699, 701 n.13 (1987-88)); see also Terri D. Keville, Studies of Transfer Trauma in Nursing Home Patients: How the Legal System Has Failed to See the Whole Picture, 3 Health Matrix: J. of Law-Medicine 421, 440-52 (Summer 1993) (discussing judicial treatment of transfer trauma); (see also Aff. of Gerald Kallas ¶ 11).[10]

      To satisfy the causation requirement of standing, plaintiffs must allege that their injuries are traceable to the challenged action of defendants. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). It is sufficient for plaintiffs to allege that defendants'

---

[10]Defendants also argue that plaintiffs fail to allege injury in fact because they do not allege that they have a legally protected interest in remaining in their homes. However, plaintiffs allege that they have a legally protected interest in not being discriminated against by reason of a disability (ADA and RA) and in having access to services to the same extent as the general population (§ 1196a(a)(30)(A), and that defendants are violating such interests by inadequately compensating Milwaukee County Family Care service providers. Plaintiffs allege that the harm they will suffer as the result of the violation of such interests is that they will be forced to move. Moreover, for plaintiffs to have standing, it is not necessary that they allege that the law affirmatively protects them against such harm. See Judicial Watch, Inc. v. U.S. Senate, 432 F.3d 359, No. 04-5422, 2005 U.S. App. LEXIS 28456 at *14 (D.C. Cir. Dec. 23, 2005). Plaintiffs only need to assert that the harm is "judicially cognizable," meaning that it satisfies the requirements that the injury be concrete and particularized, and actual or imminent. Id.

actions necessarily caused a third party to injure them.  Bennett v. Spear, 520 U.S. 154, 162 (1997).  Plaintiffs allege that defendants' unlawful conduct will cause HIL and SRCA to withdraw from Family Care, which will in turn cause harm to them.  Thus, plaintiffs adequately plead causation.  The state defendants argue that as to them the alleged causation is too attenuated.  However, plaintiffs allege that the state defendants determine the amount of compensation paid to Family Care providers, which is the cause of their injuries.  Thus, plaintiffs satisfy the causation requirement as to the state defendants.

The final element of standing, redressability, "examines the causal connection between the alleged injury and the judicial relief requested."  Allen v. Wright, 468 U.S. 737, 750-51 (1984).  To survive a motion to dismiss raising redressability, a plaintiff need only allege "that there is a substantial likelihood that the relief requested will redress the injury claimed."  Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 75 n.20 (1978) (internal quotations omitted).  Plaintiffs ask me to order defendants to increase payments to Family Care providers and allege that such relief will cause HIL and SRCA to remain in the program and result in their not having to be moved.  Thus, plaintiffs adequately allege redressability.  See Laidlaw, 528 U.S. at 815-16 (stating that "[i]t can scarcely be doubted that, for a plaintiff who is injured or who faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress").

Thus, for the reasons stated, I conclude that plaintiffs have standing to sue for prospective relief.

**C.      Failure to State a Claim**

**1.      Standard**

10

Rule 12(b)(6) motions filed after an answer are construed as motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See Warzon v. Drew, 60 F.3d 1234, 1237 (7th Cir. 1995). However, like a Rule 12(b)(6) motion, a court may grant a motion under Rule 12(c) only if the plaintiffs can prove no set of facts that would entitle them to relief. N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 453 (7th Cir. 1998) (citing Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997)). The essence of the motion is not that the plaintiffs have pleaded insufficient facts; it is that, even assuming all of their facts are accurate, they have no legal claim. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 627 (7th Cir. 1999). In considering the motion, the court must assume that all facts alleged in the complaint are true, and construe those facts and all reasonable inferences flowing from them in the light most favorable to the plaintiff. Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir. 1990).

### 2.    Claims Against Defendant Nelson

Defendant Nelson argues that I should dismiss all of plaintiffs' discrimination claims against her because plaintiffs do not allege facts supporting such claims and, alternatively, that I should dismiss plaintiffs' ADA claims against her because she is not a "public entity" within Title II of the ADA. Plaintiffs sue Nelson in her official capacity. A suit against a state official in her official capacity is a suit against the state. Kentucky v. Graham, 473 U.S. 159, 165-66 (1984); see also Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003) (explaining that the ADA permits suits against an individual sued in her official capacity because the suit is in effect against the "public entity," the state agency). Thus,

11

Nelson's arguments in support of dismissing plaintiffs' claims are the same as DHFS's, and I will address them when I discuss DHFS's arguments.[11]

### 3.    Count One and Five Claims

In counts one and five, plaintiffs allege that defendants are discriminating against them in violation of the ADA and RA by paying Family Care providers less than they pay providers of services to three other groups of persons with disabilities: (1) persons in Milwaukee County who are under sixty; (2) persons in non-Family Care counties; and (3) persons in Milwaukee County whose disabilities are less serious than their's. Defendants argue first that these claims fail because plaintiffs do not allege that they are being denied services. However, to survive defendants' motion, plaintiffs need not allege that they are being denied services outright. The ADA and RA are broad statutes that protect persons with disabilities from discrimination by public entities by reason of such disability. See Bledsoe v. Palm Beach County Soil & Water Conservation Dist., 133 F.3d 816, 822 (11th Cir. 1998); Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 44-45 (2d Cir. 1997); see also Downs v. Mass. Bay Transp. Auth., 13 F. Supp. 2d 130, 135 (D. Mass. 1998) (noting that "[t]he [defendant] focuses exclusively on the access to the 'services, programs, or activities' of public entities guaranteed by the first prong of this section, and disregards the general prohibition on discrimination provided by the second prong" of § 12132). Thus, plaintiffs' allegations that defendants are discriminating against them by

---

[11]The state defendants also argue that to the extent plaintiffs seek damages for past conduct, their claims are barred by sovereign immunity. I need not address this argument as I have already indicated that such claims will be dismissed. The state defendants do not raise sovereign immunity arguments with respect to plaintiffs' claims seeking prospective relief.

providing lesser funding for their services than to other persons with disabilities are sufficient to withstand defendants' motion to dismiss.[12]

Defendants also argue that plaintiffs' count one and five claims fail because plaintiffs do not allege discrimination by reason of disability. The ADA requires that discrimination be by reason of disability, and the RA requires that discrimination be <u>solely</u> by reason of disability. <u>Washington v. Ind. High Sch. Athletic Ass'n</u>, 181 F.3d 840, 845 n.6 (7th Cir. 1999). To the extent that plaintiffs allege that defendants are treating them worse than persons with disabilities who are under sixty or who live in non-Family Care counties, they allege discrimination on the basis of age and county of residence rather than disability. (<u>See</u> Pls.' Supp. Br. at 8) (explaining that "[i]f plaintiffs happened to be a few years younger or if they lived in a different Wisconsin county, they would be able to choose their homes without the constraints that result from the government actions at issue in this litigation"). Thus, to the extent that plaintiffs allege differential treatment based on age or geography, their claims must be dismissed. However, to the extent that plaintiffs allege that defendants are treating them worse than persons with less severe disabilities, they may proceed as such claims allege differential treatment by reason of disability. <u>See</u> <u>Jackson v. Fort Stanton Hosp. & Training Sch.</u>, 757 F. Supp. 1243, 1299 (D.N.M. 1990) (stating that "[t]he severity of plaintiffs' [disability] is itself a [disability]" which is protected by the ADA

_____

[12]Defendants also argue that plaintiffs only allege that they were discriminated against in relation to other disabled persons and thus fail to state a claim under the ADA and the RA because neither the ADA nor the RA establish an obligation to meet a disabled persons' needs vis-a-vis the needs of other disabled persons. I disagree. <u>See</u> <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581, 598-603 (1999) (explaining that the ADA prohibits not only disparate treatment that favors non-disabled persons over disabled persons, but also prohibits disparate treatment among the disabled).

13

and the RA); see also Messier v. Southbury Training Sch., No. 3:94-CV-1706, 1999 U.S. Dist. LEXIS 1479, at *33 (D. Conn. Jan. 5, 1999) (listing cases in which courts have held that the ADA and the RA prohibit discrimination based on the severity of a disability).

Defendants next argue that plaintiffs fail to plead facts sufficient to support their allegation of discrimination by reason of severity of disability. However, to survive a motion to dismiss, plaintiffs need not plead facts but must only provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 48 (1957); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (holding that Rule 8(a) is satisfied so long as plaintiff gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests); Thomas v. Washington, 362 F.3d 969, 970-71 (7th Cir. 2004) (stating that it is not necessary to plead facts to state a claim for relief). Thus, defendants' challenge on this ground must be rejected.

Accordingly, as outlined above, I will grant in part and deny in part defendants' motions to dismiss plaintiffs' count one and five claims.

### 4.    Count Two and Six Claims

The ADA and RA and their implementing regulations require public entities to administer programs so as to enable persons with disabilities to fully participate in and benefit from them and prohibit public entities from affording some persons with disabilities less opportunity to participate in and benefit from programs than others. 28 C.F.R. § 35.130(b)(3)(e). In counts two and six, plaintiffs allege that defendants so inadequately compensate Family Care providers as to deny plaintiffs effective access to services in violation of the above provisions. Defendants argue that plaintiffs' claims are deficient for failing to identify a comparison group against which to measure the benefits of the Family

14

Care program.  However, if I construe plaintiffs' claim as one of failure to accommodate, plaintiffs are not required to compare themselves to another group.  Henrietta D., 331 F.3d at 274.  Further, if I construe plaintiffs' claim as one involving intentional discrimination or disparate impact and take all inferences in the light most favorable to them, plaintiffs allege the existence of a comparison group consisting of persons with disabilities less severe than their own.  Thus, I decline to dismiss plaintiffs' count two and six claims on this ground.

Defendants also argue that plaintiffs fail to plead sufficient facts to support their allegations.  However, as previously indicated, plaintiffs are not obliged to plead facts. Thomas, 362 F.2d at 970-71.[13]

Therefore, plaintiffs' count two and six claims survive defendants' motions to dismiss.

### 5.    Count Three and Seven Claims

The ADA requires public entities to administer programs "in the most integrated setting appropriate to the needs of qualified individuals with disabilities," 28 C.F.R. § 35.130(d) (2004), which is one "that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible," 28 C.F.R. pt. 35, app. A at 543 (2004). The RA contains a "materially identical" integration requirement.  Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 911-12 (7th Cir. 2003) (citing 28 C.R.F. §

---

[13]Defendants also argue in passing that plaintiffs' count six claims should be dismissed because, although presented as a discrimination claim, plaintiffs are actually challenging a decision concerning the medical treatment they are receiving and the RA precludes such a claim.  See Grzan v. Charter Hosp., 104 F.3d 116, 120-21 (7th Cir. 1997).  However, construing the claim in the light most favorable to plaintiffs, plaintiffs are not challenging decisions concerning their treatment but rather alleging discriminatory funding.

15

41.51(d), which states that "recipients [of federal funding] shall administer programs and activities in the most integrated settings appropriate to the needs of qualified handicapped persons"). Thus, the "unjustified institutional isolation" of persons with disabilities is an actionable form of discrimination – even in the absence of proof that such persons are being treated differently than similarly situated persons without disabilities. <u>Olmstead</u>, 527 U.S. at 597; <u>see also</u> <u>Radaszewski ex rel. Radaszewski v. Maram</u>, 383 F.3d 599, 608 (7th Cir. 2004); <u>Bruggeman</u>, 324 F.3d at 911 (holding that disabled persons are entitled to care in the least restrictive environment possible).

Plaintiffs allege that defendants' actions "substantially increase the probability that Milwaukee County residents with disabilities who are sixty and over will be placed in more restrictive, less integrated settings despite their preference for less restrictive, more integrated settings" (Fourth Am. Compl. ¶¶ 153, 171), and thus violate the ADA and RA. Defendants argue that plaintiffs fail to allege facts that support this allegation. However, as indicated, plaintiffs are not required to plead facts but need only provide defendants with fair notice of their claim. <u>Swierkiewicz</u>, 534 U.S. at 512. Plaintiffs' allegations satisfy this requirement.

Defendants also argue that plaintiffs' count seven claim fails because plaintiffs allege discrimination based on age rather than disability. However, as discussed above, to state a failure to integrate claim, plaintiffs need not allege differential treatment.

Thus, plaintiffs' count three and seven claims survive defendants' motions.

**6.    Count Four and Eight Claims**

The ADA and RA require public entities to reasonably modify their policies "when the modifications are necessary to avoid discrimination on the basis of disability, unless the

16

public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7); <u>see also</u> <u>Wis. Cmty. Serv. v. City of Milwaukee</u>, 309 F. Supp. 2d 1096, 1104 (E.D. Wis. 2004).  In their count four and eight claims, plaintiffs allege that defendants are obliged to reasonably modify their policies so as to make individualized determinations of the services needed by plaintiffs.  Defendants ask me to dismiss these claims, arguing that plaintiffs' proposed modifications would essentially require Family Care to compensate providers on a fee for service basis and thus would fundamentally alter the program.  However, the determination of whether plaintiffs' requested alterations would fundamentally alter Family Care requires a more fact intensive inquiry than is appropriate on a motion to dismiss.  <u>See</u> <u>Crowder v. Kitagawa</u>, 81 F.3d 1480, 1485-86 (9th Cir. 1996) (stating that "the determination of what constitutes reasonable modifications is highly fact-specific requiring case-by-case inquiry"); <u>Wong v. Regents of Univ. of Cal.</u>, 192 F.3d 807, 818 (9th Cir. 1999) (explaining that the question of what constitutes a reasonable accommodation "requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations" requested).[14]

Defendants also argue that plaintiffs fail to allege facts sufficient to support their count four and eight claims.  However, as discussed, plaintiffs are not required to plead facts.  <u>Swierkiewicz</u>, 534 U.S. at 512.

---

[14]Defendants also argue that I should dismiss plaintiffs' other ADA and RA claims because the discrimination alleged cannot be reasonably accommodated.  However, I cannot make such a determination on a motion to dismiss.

Finally, defendants argue that I should dismiss plaintiffs' RA accommodation claim because plaintiffs do not allege discrimination solely on the basis of disability but also on the basis of age. However, to prevail on an accommodation claim, plaintiffs need not show differential treatment of any sort. <u>Henrietta D.</u>, 331 F.3d at 276-77.

Thus, I will deny defendants' motions to dismiss plaintiffs' count four and eight claims.

7.     **Claim Based on Medicaid Statute**

Plaintiffs also bring a § 1983 claim alleging that defendants are violating the "equal access" provision of § 1396a(a)(30)(A), which requires a state Medicaid plan to

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary . . . to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

Plaintiffs allege that the capitated rates set by the state defendants and paid to Milwaukee County are inadequate to enlist enough providers so that care and services are available to participants in Family Care to the extent that they are available to the general population. Defendants first argue that § 1396a(a)(30)(A) does not create a private right of action enforceable under § 1983.

A plaintiff may bring a § 1983 action against a person acting under color of state law to vindicate the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The phrase "and laws" permits persons to sue for the violation of rights secured to them by federal statutes. <u>Maine v. Thiboutot</u>, 448 U.S. 1, 4-8 (1980). However, § 1983 does not "provide an avenue for relief every time a state

18

actor violates a federal law." City of Rancho Palos Verdes v. Abrams, 125 S. Ct. 1453, 1458 (2005). Instead, "it is rights, not the broader or vaguer 'benefits' or 'interests' that may be enforced under the authority of that section." Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002). Thus, to survive defendants' motions to dismiss, plaintiffs must establish that § 1396(a)(30)(A) "creates an individually enforceable right in the class of beneficiaries to which [they] belong." City of Rancho Palos Verdes, 125 S. Ct. at 1458. If plaintiffs establish that the statute creates a presumptively enforceable right, defendants must demonstrate that Congress has "specifically foreclosed a remedy under § 1983" either expressly "or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Blessing v. Freestone, 520 U.S. 329, 341 (1997).

For a statute to create a presumptively enforceable right, three factors must be present: (1) Congress must have intended that the statute benefit plaintiff; (2) the right must not be so "vague and amorphous" that its enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the states. Id. at 340-41. With respect to the first factor, in creating Medicaid, Congress intended to benefit recipients of services provided by the program. However, in the case of a spending statute such as Medicaid, see Bruggeman, 324 F.3d at 911, Congress must "speak with a clear voice" and manifest its "unambiguous intent to confer individual rights before federal funding provisions will be read to provide a basis for private enforcement." Gonzaga Univ., 536 U.S. at 1268 (citing Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 28 n.21 (1982)).

19

Title 42 U.S.C. § 1320a-2 provides that "an action may be brought to enforce another provision of this chapter," i.e., the equal access provision, and that "such provision is not deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan." Thus, "§ 1396a(a)(30)(A) will not be deemed unenforceable [by recipients] simply because it only elaborates on what a state plan must include." Memisovski ex rel. Memisovski v. Maram, No. 92 C 1982, 2004 WL 1878332, at * 6 (N.D. Ill. Aug. 23, 2004). Furthermore, the equal access provision is "couched in mandatory language," e.g., the State "must" have a plan that affords equal access. "[W]hen combined with the absence of an administrative mechanism to enforce that language, [the mandatory language] connotes an intent to permit private enforcement of the provision." Clark v. Richman, 339 F. Supp. 2d 631, 639 (M.D. Pa. 2004) (citing Memisovski, 2004 WL 1878332, at *7). Moreover, in Wilder v. Virginia Hospital Association, 496 U.S. 498, 502 (1990), the Supreme Court concluded that a nearly identical provision in the Medicaid Act, 42 U.S.C. § 1396a(a)(13)(A) (1982 ed. Supp. V),[15] created private rights enforceable through § 1983, and the Court has indicated that Wilder is still good law. Gonzaga Univ., 536 U.S. at 280. Thus, "[i]f a private right of action was allowed in Wilder, there is no principled basis to say that a private right of action [under § 1396a(a)(30)(A)] is unlawful." Memisovski, 2004 WL 1878332, at *8.

_____

[15]Section 1396a(a)(13)(A) (1982 ed. Supp. V) provides that "[a] State plan for medical assistance must . . . provide . . . for payment . . . of the hospital services . . . for the mentally retarded provided under the plan through the use of rates . . . which the State finds and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal law . . . and to assure that individuals eligible for medical assistance have reasonable access . . . to inpatient services of adequate quality."

20

With respect to the second <u>Blessing</u> factor, the right at issue is not too vague and amorphous for judicial enforcement. Courts already have interpreted and enforced both the quality of care and equal access provisions of the Medicaid statute. <u>See, e.g.</u>, <u>Evergreen Presbyterian Ministries, Inc. v. Hood</u>, 235 F.3d 908, 930-31 (5th Cir. 2000) (concluding that the "equal access mandate of section 30(A) is sufficiently definite to enforce"); <u>Orthopaedic Hosp. v. Belshe</u>, 103 F.3d 1491, 1496 (9th Cir. 1997) (interpreting and enforcing the quality and access provisions of § 1396a(a)(30)(A)).

The third <u>Blessing</u> requirement, that the statute unambiguously impose a binding obligation on the states, is also satisfied. "Although Medicaid is an optional program, once a state elects to participate, the contents of the state plan specified in § 1396a(a) are required, not optional." <u>Clayworth v. Bonta</u>, 295 F. Supp. 2d 1110, 1124 (E.D. Cal. 2003). Thus, § 1396a(a)(30)(A) imposes a binding obligation on any state that participates in the Medicaid program.

Finally, nothing indicates that Congress "specifically foreclosed a remedy under § 1983." <u>Blessing</u>, 520 U.S. at 341. Thus, I conclude that § 1396a(a)(30)(A) provides a private right of action for recipients of services under Medicaid.

Defendants also argue that even if plaintiffs have a private right of action, they have failed to state sufficient facts to support their claim. However, as previously indicated, plaintiffs need not plead facts but must only put defendants on notice of their claim and the grounds upon which it rests. <u>See</u> <u>Thomas</u>, 362 F.3d at 970-71; <u>see also</u> <u>Kirksey v. R.J. Reynolds Tobacco Co.</u>, 168 F.3d 1039, 1041 (7th Cir. 1999) (stating "[t]he courts keep reminding plaintiffs that they don't have to file long complaints, don't have to plead facts, don't have to plead legal theories"). Although the allegations in plaintiffs' Medicaid claim

21

contain few facts, they are sufficient to inform defendants of the nature of their claim and the grounds upon which it rests to state a claim for relief.[16]

### III.  CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**.  Defendants' motions with respect to claims seeking damages for past conduct are **GRANTED**, and defendants' motions with respect to claims one and five are **GRANTED** to the extent previously indicated.  Defendants' motions with respect to plaintiffs' other claims are **DENIED.**

Dated at Milwaukee, Wisconsin this ___ day of February, 2006.

_____
LYNN ADELMAN
District Judge

---

[16]Defendants also argue that "it is highly unlikely that plaintiffs can rely on §1396a(a)(30)(A) alone as the basis to state a claim challenging the adequacy of the Family Care capitated rates."  (State Defs.' Br. in Support of M. to Dismiss at 41.) Defendants seem to be contending that plaintiffs should also have asserted claims under §§ 1396n(b)-(c).  However, defendants cite no authority in support of this contention.  In any case, as indicated, plaintiffs are not required to plead legal theories. Kirksey, 168 F.3d at 1041.

22