IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

GERALD NELSON, by his legal guardian and next friend, JANE PRENTICE; JOAN BZDAWKA, by her legal guardian and next friend, RICHARD MILLER; SANDRA EHRLICHMAN, by her legal guardian and next friend, NANCY STEEVES; MARILYN BERDIKOFF, by her legal guardian and next friend, LOIS DEGNER; LENORE CZARNECKI, by her agent and next friend, CAROLYN CETNAROWSKI; and JOHN GORTON, by his agent and next friend, DEBORAK BRUNK, each on their own behalf and on behalf of a class of persons similarly situated,

      Plaintiffs,

  v.                                    Case No. 04-C-0193

MILWAUKEE COUNTY; WISCONSIN DEPARTMENT OF HEALTH AND FAMILY SERVICES; and HELENE NELSON, in her official capacity as Secretary of DHFS,

      Defendants.

STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR CERTIFICATION OF INTERLOCUTORY ORDER PURSUANT TO 28 U.S.C. § 1292(B)

Defendants Wisconsin Department of Health and Family Services and Helene Nelson (collectively "the State defendants"), by their attorneys Maureen McGlynn Flanagan and Mary E. Burke, Assistant Attorneys General, and Peggy A. Lautenschlager, Attorney General, submit this reply brief in support of their motion for certification of the Court's interlocutory Order filed February 7, 2006, for appeal pursuant to 28 U.S.C. § 1292(b) and their motion for stay of further litigation of this case pending resolution of the interlocutory appeal by the court of appeals.

ARGUMENT

I. CERTIFICATION IS APPROPRIATE BECAUSE THE FEBRUARY 7, 2006, ORDER FULFILLS THE CRITERIA FOR AN IMMEDIATE APPEAL REQUIRED BY 28 U.S.C. § 1292(B).

Four statutory criteria guide the Court's decision whether to amend its February 7, 2006, Order to include a statement certifying that interlocutory Order for appeal pursuant to 28 U.S.C. § 1292(b). There must be a question of law. The question of law must be controlling. The controlling question of law must be contestable. And, resolution of that contestable, controlling question of law must promise to speed up the litigation. *Ahrenholz v. Board of Tr. of the Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000). The State defendants' request to certify the February 7, 2006, order for appeal pursuant to 28 U.S.C. § 1292(b) satisfies all those criteria, as discussed below and in the Defendants' brief-in-chief ("Defendants' brief") [Docket 94].[1]

    A. A question of law is presented.

Although plaintiffs do not dispute that a question of law is involved, they argue that it "is not a proper question of law for certification" (Plaintiff's Brief in Opposition to Motion for Certification of Interlocutory Order and Motion for Stay Pending Appeal ("Plaintiffs' brief") at 2) [Docket 103 at 2]. Plaintiffs' argument depends on characterization of the standing issue presented as "enmeshed in the factual context" (Plaintiff's brief at 3) [Docket 103 at 3]. That characterization is not correct, at this stage of the present litigation. It also fails to recognize the "pure" legal nature of the standing issue involved in the State defendants' certification request.

---

[1] A fifth, non-statutory requirement also applies; a petition for 28 U.S.C. § 1292(b) certification must be filed in the district court within a reasonable time after the order sought to be appealed. Plaintiffs' brief [Docket 103] does not challenge the timeliness of the State defendants' motion for § 1292(b) certification. The State defendants therefore do not address the non-statutory fifth requirement further in this reply brief.

- 2 -

Plaintiffs correctly note Seventh Circuit case law characterizing a question of law, for purposes of 28 U.S.C. § 1292(b) as "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than . . . whether the party opposing summary judgment had raised a genuine issue of material fact." *Ahrenholz*, 219 F.3d at 676. *Cf.* Plaintiff's brief at 2 [Docket 103 at 2]. As the Seventh Circuit has explained:

> We think [the framers of § 1292(b)] used "question of law" in much the same way a lay person might, as referring to a "pure" question of law rather than merely to an issue that might be free from a factual contest. The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case.

*Ahrenholz*, 219 F.3d at 676-77. *Cf.* Plaintiffs' brief at 2 [Docket 103 at 2].

The State defendants request this Court's 28 U.S.C. § 1292(b) certification of a "pure" question of law: the meaning of the common law doctrine of standing in the factual circumstances of this case. That the question of law is framed by specific facts does not somehow cause the question to become "enmeshed in the factual context." The standing issue is quite discretely framed: whether elderly persons with disabilities who currently reside in particular community living situations have standing to challenge a public funding mechanism that they prospectively claim threatens that they might have to move from those particular community living situations. In other words, does standing exist in this specific factual context? Resolution of that pure issue of law requires no further resort to the record. Consequently, the question of law cleanly presented in this case is very different from the types of legal questions *Ahrenholz* identifies as not eligible for 28 U.S.C. § 1292(b) certification—for example, reviewing the entire record of summary judgment proceedings to determine whether a question of material fact had been raised by the various filings of the parties. *Cf. Ahrenholz*, 219 F.3d at 676.

Similarly, the discrete legal parameters of the standing issue presented in this case are easily distinguished from a fact-intensive personal jurisdiction issue that would require reviewing the record to determine a party's contacts with the jurisdiction, determining whether those contacts count toward personal jurisdiction, assessing how much weight to give each of the contacts, and deciding whether the contacts cumulatively support exercise of personal jurisdiction. *Cf. Shepherd Investments Int'l, Ltd. v. Verizon Communications, Inc.*, 2005 WL 1475323, *2 (E. D. Wis. 2005).

In fact, the Eighth Circuit recently considered very similar standing issues on interlocutory appeal in *Bill M. v. Nebraska Dep't of Health and Human Svcs. Finance and Support*, 408 F.3d 1096 (8th Cir.), *reh'g denied* (2005). Seven persons with developmental disabilities had sued Nebraska and various state officials, alleging violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and various other state and federal laws. The plaintiffs alleged that they had been denied home and community-based Medicaid-funded services. Among other things, the plaintiffs further alleged that Nebraska's failure to fund those services left the plaintiffs at imminent risk of unnecessary institutionalization. The district court denied the defendants' motion to dismiss on sovereign immunity grounds, and the defendants took an interlocutory appeal on that issue. *Bill M.*, 408 F.3d at 1098.

Once on appeal, however, the Eighth Circuit sua sponte raised the issue of standing, explaining that "it is elementary that standing relates to the justiciability of a case and cannot be waived by the parties." *Bill M.*, 408 F.3d at 1098 n.1. That the Eighth Circuit sua sponte found it necessary to raise and address standing, even though that was not the issue on which the defendants' interlocutory appeal had been taken, forcefully demonstrates the appropriateness— indeed, necessity—of allowing interlocutory appeal on standing issues.

Furthermore, of special relevance to the standing issue presented in the instant case, the Eighth Circuit found that the "mere risk that Plaintiffs might be institutionalized due to the lack of adequate funding does not constitute an actual or imminent harm sufficient to satisfy the first element of standing." *Bill M.*, 408 F.3d at 1099. Certainly the factual framework of the standing issues presented in *Bill M.* was no more complicated than that of the standing issue presented in the present case. *Bill M.* therefore teaches that not only is this type of standing issue a question of law appropriate for consideration on interlocutory appeal, it is the type of threshold issue that should be considered on interlocutory appeal.

B.     The question of law is controlling.

Plaintiffs summarily dismiss the significance of this factor, arguing that it alone cannot justify granting interlocutory appeal but not addressing it on the merits. In fact, they characterize this factor as "immaterial" to resolution of the State defendants' certification request. Plaintiffs' brief at 7 [Docket 103 at 7]. Because the question of standing is so central to justiciability of this case, however, the controlling nature of the issue not only is material and must be considered—it also weighs heavily in favor of certifying the February 7, 2006, Order for interlocutory appeal.

"[I]f resolution of the issue being challenged on appeal will terminate the action in the district court, it is clearly controlling. Controlling questions of law that fall within this category of dispositive issues include . . . questions as to . . . standing to maintain the action." 19 James Wm. Moore et al., *Moore's Federal Practice* § 203.31[2], at 203-87 – 203-90 & n.9 (3d ed. 2005), *citing Schact v. Brown*, 711 F.2d 1343, 1344 (7th Cir. 1983) (interlocutory appeal certified; controlling question of law as to whether plaintiff may sue for the type of injury alleged).

- 5 -

Case 2:04-cv-00193-LA   Filed 03/30/06   Page 5 of 15   Document 105

Other courts are solidly in accord on this issue. *See, e.g.*, *Klapper v. Commonwealth Realty Trust*, 662 F. Supp. 2345, 236 (D. Del. 1987) (standing is a controlling question of law; if plaintiffs have no standing, the litigation will terminate and such questions are particularly well suited for an interlocutory appeal); *APCC Services, Inc. v. AT&T Corp.*, 287 F. Supp. 2d 101, 105 (D.D.C. 2003) (controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources), *citing United States ex rel. Wisconsin. v. Dean*, 729 F.2d 1100, 1103 (7th Cir. 1984) (subject matter jurisdiction involves a controlling question of law); *Forest Guardians v. Bureau of Land Mgt.*, 188 F.R.D. 389, 396 (D.N.M. 1999) (standing is a controlling question of law). That standing presents a controlling issue of law is further demonstrated by comparison with issues of law that are collateral, rather than controlling. *See, e.g., Stout v. Illinois Farmers Ins. Co.*, 882 F. Supp. 776, 778 (S.D. Ind. 1994) (controlling issue of law is a threshold issue seriously impacting the way that the court conducts the litigation, such as whether or not the plaintiff has a cause of action; discovery issue concerning documents to which litigant will have access in building his or her case is not a controlling issue of law).

Furthermore, the impact that the interlocutory appeal will have on other cases also supports a conclusion that a question of law is controlling. *APCC Services*, 287 F. Supp. 2d at 105, *citing Brown v. Bullock*, 294 F.2d, 415, 417 (2d Cir. 1961) (leave to appeal granted in part because determination was likely to have precedential value for large number of other suits). This Court's February 7, 2006, Order cited no other case finding standing to exist in circumstances closely related to the present case. *Cf.* Order at 6-10 [Docket 86 at 6-10]. Plaintiffs now have acquired institutional co-counsel with a national practice. *See* Notice of Appearance and Declarations of Attorneys Sarah Jane Somers and M. Jane Perkins of the

- 6 -

National Health Law Program, Inc. [Docket 97-99]. Resolution of the standing issue presented in this case undoubtedly will affect the filing and resolution of similar lawsuits in other jurisdictions.

For all these reasons, the issue of plaintiffs' standing to sue presents a controlling question of law weighing in favor of the State defendants' certification request.

        C.        The controlling question of law is contestable.

Plaintiffs argue that the standing issue presented by the State defendants' 28 U.S.C. § 1292(b) certification request is not contestable (Plaintiffs' brief at 4-5) [Docket 103 at 4-5]. Their argument is premised on selective interpretation of the cases cited in support and failure to acknowledge applicable Eastern District of Wisconsin and Seventh Circuit precedent.

In the Seventh Circuit, the "controlling question of law" requirement is interpreted with flexibility. *Johnson v. Burken*, 930 F.2d 1202, 1205-06 (7th Cir. 1991). A question of law may be deemed controlling if its resolution quite likely would affect the further course of the litigation. *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996).

First, plaintiffs complain that the State defendants have not identified any opinion or other authority that conflicts with the February 7 Order—including the case cited in the State defendants' brief in chief, *Tobin for Governor v. Illinois State Bd. of Elec.*, 268 F.3d 517 (7th Cir. 2001). *Cf.* Plaintiffs' brief at 4 [Docket 103 at 4]. However, the legal principle for which the State defendants rely on *Tobin*—that speculation is insufficient to establish the standing requirement of injury-in-fact—clearly conflicts with the February 7 Order, which cites no contrary case law on that point of law. *See* Defendants' brief at 5 [Docket 94 at 5]; *cf.* February 7, 2006, Order at 8-9 [Docket 86 at 8-9].

Second, plaintiffs assert that a case cited in the February 7 Order on a different standing requirement—causation—supports the Court's conclusion that standing exists. *Cf.* Plaintiffs' brief at 4-5, *citing Bennett v. Spear*, 520 U.S. 154 (1997) [Docket 103 at 4-5]. *Bennett* involved an entirely different aspect of standing from the present case: whether those petitioners had a sufficient interest in an environmental regulatory matter to obtain standing. *See Bennett*, 520 U.S. at 161-66. Insufficiency of speculation to establish injury-in-fact simply was not involved in *Bennett*. Moreover, *Bennett* comes nowhere near addressing the theory underlying Plaintiffs' entire brief, that the interest of plaintiffs that is protected under the ADA and RA is the interest in not moving, rather than the interest in residing in the most integrated setting and otherwise in receiving services in a non-discriminatory manner. Throughout the plaintiffs' argument it is clear that they premise their standing argument on the threat of having to move in and of itself. No issue anything like that appears anywhere in *Bennett.*

Third, plaintiffs claim that lack of precedent is immaterial to the contestability of a controlling issue of law (Plaintiffs' brief at 5-6) [Docket 103 at 5-6]. That is incorrect. Finding the existence of a substantial difference of opinion is warranted when there is no authority in the present jurisdiction, but there exists a unanimous decision from an appellate court in another circuit on the same issue. *APCC Services*, 297 F. Supp. 2d at 108. Given the Eighth Circuit's recent *Bill M.* decision, discussed above, that is precisely the situation that exists in this case with respect to the standing issue presented in this case. There is no Seventh Circuit precedent directly on point in similar factual circumstances, but there is a unanimous Eighth Circuit decision almost on all fours with the facts of the present case. *See also Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.*, 291 F.3d 1000, 1007-08 (7th Cir. 2002)

(application of statues to facts alleged presents question of law of first impression that is certainly contestable).

Finally, plaintiffs argue that a party seeking 28 U.S.C. § 1292(b) certification must show a substantial likelihood of reversal on appeal (Plaintiffs' brief at 5-6) [Docket 103 at 5-6]. The State defendants submit that lack of authority supporting the February 7 order on the aspect of standing at issue in this case, as well as the *Bill M.* decision, sufficiently establish substantial likelihood of reversal on appeal. Moreover, the cases cited by plaintiffs in support of this argument do not involve issues of standing. *Boese v. Paramount Pictures Corp.*, 952 F. Supp. 550 (N.D. Ill. 1996) involves a post-summary judgment request for 28 U.S.C. § 1292(b) certification on whether statements attributed to those defendants were defamatory per se and cast those plaintiffs in a bad light. *See Boese*, 952 F. Supp. at 553, 560-61. *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 212 F. Supp. 2d 903 (S.D. Ind. 2002) involved various choice of forum and choice of law issues. *See Bridgestone/Firestone*, 212 F. Supp. 2d at 905-06. *Cf.* Plaintiffs' brief at 5 [Docket 103 at 5].

Furthermore, *Bridgestone/Firestone* expressly noted that the standard in that Indiana district court for existence of a contestable issue differed from that of the Eastern District of Wisconsin. The *Bridgestone/Firestone* court quoted *Stong v. Bucyrus-Erie Co.*, 476 F. Supp. 224, 225 (E.D. Wis. 1979), for the proposition that the contestable issue criteria is satisfied when "'a reasonable appellate judge could vote for reversal of the challenged order.'" *Bridgestone/Firestone*, 212 F. Supp. 2d at 909. The *Bridgestone/Firestone* court then went on to apply a more stringent standard akin to that advocated by the plaintiffs in this case. *Id.* at 909-10. *Stong* is the law in this district—not *Bridgestone/Firestone*. Given the lack of controlling

Seventh Circuit authority and the inconsistent *Bill M.* decision, a reasonable appellate judge certainly could vote for reversal of the Court's February 7 order on standing.

> D. Resolution of the standing issue in an interlocutory appeal promises to speed up the litigation.

Plaintiffs' argument that certifying the standing issue pursuant to 28 U.S.C. § 1292(b) "is highly unlikely to expedite the litigation" ignores both the purpose of § 1292(b) interlocutory appeals and the threshold nature of the standing question now at issue in this case. *Cf.* Plaintiffs' brief at 6.

As explained in the Defendants' brief at 6-7 [Docket at 6-7], reversal of the Court's February 7 Order on standing would conclude this case entirely and the primary purpose of a § 1292(b) interlocutory appeal is to materially advance ultimate termination of the litigation. *See Fisons Ltd. v. United States*, 458 F.2d 1241, 1245 (7th Cir. 1972). Instead of addressing the centrality of plaintiffs' standing to justiciability of the entire remaining case or the purpose of § 1292(b) interlocutory appeals, plaintiffs make an emotional appeal based on alleged facts not of record and sheer speculation (Plaintiffs' brief at 6-7) [Docket 103 at 6-7].

That is not the legal test, however. Immediate review would materially advance the ultimate termination of this litigation if the Seventh Circuit reversed this Court's ruling on standing, which would dispose of the case and no further proceedings would be necessary. *Stong*, 476 F. Supp. at 225. Appeal now would conserve judicial resources and spare the parties from needless expense if it should turn out that this Court's rulings are reversed. In the event that plaintiffs ultimately are found to lack standing, it would be far better for all concerned— including plaintiffs—to have these matters resolved now as opposed to some time in the distant future. *APCC Services*, 297 F. Supp. 2d at 109. *See also Wieboldt Stores, Inc. v. Schottenstein*

*Stores Corporation*, 1989 WL 51068, *2 (N.D. Ill. May 5, 1989) (interlocutory appeal would materially advance the termination of the litigation if it "might preclude wasteful and time-consuming discovery as well as a lengthy and complex trial"); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 753 (3d Cir. 1974) ("Section 1292(b) was the result of dissatisfaction with the prolongation of litigation and with harm to litigants uncorrectable on appeal from a final judgment."); *Klapper v. Commonwealth Realty Trust*, 662 F. Supp. 2345, 236 (D. Del. 1987) (if plaintiffs have no standing, the litigation will be terminated and that satisfies the test that an immediate appeal may materially advance the ultimate termination of the litigation).

In this case, plaintiffs propose to mount a complicated class action lawsuit involving massive, expensive discovery activities including retention of expert witnesses and preparation of actuarial analyses. The State defendants do not have unlimited litigation resources, or unlimited resources, period. Eventual reversal on appeal of the standing rulings set forth in this Court's February 7 Order would needlessly waste scarce state resources that would have to be committed to discovery and other immediate litigation activities if interlocutory appeal is not permitted for review of the plaintiffs' very questionable standing to pursue the prospective relief they seek in this lawsuit.

> II. STAY OF PROCEEDINGS IN THIS COURT IS NECESSARY TO ACHIEVE THE PURPOSES OF THE INTERLOCUTORY APPEAL, ESPECIALLY SINCE PLAINTIFFS OFFER NO PROOF OF ANY ACTUAL OR EVEN IMMINENT HARM.

Because resolution of the standing issue in the State defendants' favor will terminate this litigation, they have asked this Court to stay litigation of this case pending resolution of their interlocutory appeal by the court of appeals. Motion for Stay Pending Appeal [Docket 95]. Opposing that stay, plaintiffs have identified only general principles of law and advanced the

- 11 -

Case 2:04-cv-00193-LA   Filed 03/30/06   Page 11 of 15   Document 105

totally unsupported allegation that "the plight of the individual Plaintiffs is getting worse along with the magnitude of the rate dispute" (Plaintiffs' brief at 8) [Docket 8]. The problem with plaintiffs' position on whether a stay should be granted is the same problem that undermines their whole standing argument—they have not shown any proof of actual or imminent harm either to themselves or any potential class member on account of the Family Care operations they challenge, and their attempts to conjure up prospective harm are totally speculative. There simply is no evidence that the "plight" of any plaintiff or prospective plaintiff is "getting worse." *Cf.* Plaintiffs' brief at 8 [Docket 103 at 8]. What was submitted to the Court in support of the State defendants' motion to dismiss and is part of the record is the CMO contract requiring Milwaukee County to provide services in the most integrated setting, even if the plaintiffs' providers were to follow thorough on their threats to discharge plaintiffs. The harm against which applicable laws protect plaintiffs is against discrimination based on disability, not against potentially having to move or provide service providers.

Nevertheless, the plaintiffs ask this Court to deny the stay requested by the State defendants with the consequential effect that burdensome and expensive class certification and discovery activities proceed forward. It is the State defendants, not the plaintiffs, who will bear the burden of these activities in disruption of the regular program activities of state personnel and diversion of scarce resources from program administration. The whole point of the State defendants' request for § 1292(b) certification is that the burden of this litigation should not be imposed on the State defendants until the issue of plaintiffs' highly questionable standing is resolved. Granting § 1292(b) certification but denying a stay would have the practical effect of actually increasing the State defendants' litigation burdens by requiring them to go forward with class certification, discovery and other activities in this Court while at the same time litigating a

- 12 -

Case 2:04-cv-00193-LA   Filed 03/30/06   Page 12 of 15   Document 105

potentially dispositive appeal in the Seventh Circuit. Substantially more is at stake for the State defendants than "[a]dministrative efficiency" if litigation in this Court is not stayed pending interlocutory appeal of plaintiffs' standing. *Cf.* Plaintiffs' brief at 7 [Docket 103 at 7].

The burdensomeness of requiring the State defendants to proceed with litigation in this Court during the pendency of an interlocutory appeal easily distinguishes this case from the authorities upon which plaintiffs cursorily rely. In *Reed v. Rhodes*, 549 F.2d 1050, 1051 (6th Cir. 1976), denying a stay pending interlocutory appeal simply required those defendants to cooperate with development of a remedial plan addressing racially segregated conditions in the Cleveland Schools. As the Sixth Circuit explained, "The restraints placed upon defendants by the district court's order are neither severe nor costly. The order does not compel defendants to perform any particular act, except to participate in the formulation of a remedial plan." *Id.* That is a very different situation from the present case, where denying the State defendants' request for a stay will require participate in intensive, expensive litigation activities. *Cf.* Plaintiffs' brief at 7-8 [Docket 103 at 7-8].

Even worse, in *Powell v. National Football League*, 711 F. Supp. 959, 961 (D. Minn. 1989), a stay was denied for reasons that are totally unexplained other than a cursory statement that the "potential harm to plaintiffs in further delaying resolution of its antitrust claims outweighs any benefit that may be gained by awaiting the Court of Appeals' decision." *Id.* at 962. In that case, however, a number of previous district court decisions already had resolved many controlling issues. *Id.* at 961. Unlike the present case, *Powell* did not involve threshold and potentially dispositive issues like whether the plaintiffs had any standing at all to pursue the lawsuit. *Cf.* Plaintiffs' brief at 7-8 [Docket 103 at 7-8].

What the plaintiffs have offered in support of their dire assertions that their plight is getting worse appears to be one newspaper article and bald speculation about the consequences of one procedural development reported in that article. *Cf.* Plaintiffs' brief at 7-8 [Docket 103 at 7-8]. Quite clearly, the Court has not been provided with "the rest of the story." Given the lack of any actual evidence of the imminent harms alleged by the plaintiffs, in order to avoid undermining the very purpose for which the State defendants are pursuing an interlocutory appeal this Court should stay further proceedings in the case at least until it is determined whether the interlocutory appeal will proceed in the Seventh Circuit and, after that, until plaintiffs demonstrate that their claims of alleged harm are something more than doomsday warnings based on pure speculation.

Finally, plaintiffs do not address the well-established criteria for stay pending appeal. A party seeking a stay pending appeal must show a likelihood of success on the merits, that irreparable harm will occur if a stay is not granted, that the potential harm to the movant outweighs the harm to the opposing party if a stay is not granted, and that granting the stay would serve the public interest. *Sofinet v. Immigration and Naturalization Serv.*, 188 F.3d 703 (7th Cir. 1999). These factors are not prerequisites, but rather interrelated considerations that must be balanced together. *Michigan Coal. of Radioactive Material Users, inc. v, Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991), *rev'd on other grounds*, 954 F.2d 1174 (6th Cir. 1992). The State defendants have demonstrated a strong likelihood of success on the merits, for the reasons explained in Section I.C. above. Potential harm to the State defendants if a stay is not granted is closely intertwined with the public interest. As explained above in this Section II, the State defendants should not be forced to expend their finite resources litigating complicated legal issues until plaintiffs' questionable standing to pursue those issues is resolved. Plaintiffs have

offered no evidence of any real harm if stay is granted, only speculation based on a questionable legal theory strenuously disputed by the State defendants. Balancing these interrelated considerations together under the current circumstances of this case heavily weighs in favor of staying district court litigation pending interlocutory appeal of plaintiffs' standing in this lawsuit.

CONCLUSION

For the reasons discussed above, the State defendants respectfully renew their request for certification from this Court pursuant to 28 U.S.C. § 1292(b) to seek review by the court of appeals of the interlocutory Order of February 7, 2006. The State defendants also respectfully renew request their request for stay of further litigation of this case pending resolution of the interlocutory appeal by the court of appeals.

Dated this 30th day of March, 2006.

PEGGY A. LAUTENSCHLAGER
Attorney General

s/Maureen McGlynn Flanagan
MAUREEN MCGLYNN FLANAGAN
Assistant Attorney General
State Bar #1013639

s/Mary E. Burke
MARY E. BURKE
Assistant Attorney General
State Bar #1015694

Attorneys for Defendants
Wisconsin Department of Health
and Family Services and Helene Nelson

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
Fax: (608) 267-2223
Telephone: (608) 266-1780 (Flanagan)
Email: flanaganmm@doj.state.wi.us
Telephone: (608) 266-0323 (Burke)
Email: burkeme@doj.state.wi.us